## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| ILLINOIS AUTO TRUCK CO., INC., | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 22-00284 |
| | : | |
| UNITED STATES OF AMERICA; | : | |
| OFFICE OF THE UNITED STATES TRADE | : | |
| REPRESENTATIVE; KATHERINE TAI, U.S. TRADE | : | |
| REPRESENTATIVE; U.S. CUSTOMS & BORDER | : | |
| PROTECTION; TROY MILLER, IN HIS | : | |
| OFFICIAL CAPACITY AS SENIOR OFFICIAL | : | |
| PERFORMING THE DUTIES OF THE | : | |
| COMMISSIONER OF THE U.S. CUSTOMS & BORDER | : | |
| PROTECTION; | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

Plaintiff, Illinois Auto Truck Co., Inc. ("Illinois Auto Truck"), by and through its

attorneys, alleges and states as follows:

1.      This action concerns Defendants' unlawful and unsupported increase and

modification of the Section 301 tariffs affecting over $500 billion in imports from the People's

Republic of China.  This Complaint focuses on Defendants' unlawful imposition of tariffs on

products covered by so-called List 3 and List 4.  *Notice of Modification of Section 301 Action:*

*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*

*Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); Request for Comments Concerning Proposed

Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to

1

Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 22,564 (May 17, 2019).

2.     The Trade Act of 1974 ("Trade Act") does not confer unfettered authority on Defendants to pursue repeated and extended tariff increases for an unspecified amount of time by any means.  The Office of the United States Trade Representative ("USTR") was bound by the authority delegated under Section 301 of the Trade Act (19 U.S.C. § 2411) when it conducted an investigation into China's unfair policies and practices and must take appropriate action.  Section 304 of the Trade Act (19 U.S.C. § 2414) requires USTR to determine what action to take, if any, within 12 months *after* initiation of that investigation.  USTR failed to issue List 3 (or subsequent List 4) within that statutorily prescribed window of time.

3.     Congress has the exclusive "power to lay and collect {t}axes, {d}uties, {i}mposts and {e}xcises" and "to regulate Commerce with foreign nations."  U.S. Const. Art. I § 8, Cls. 1, 3.  In Section 301, Congress delegated authority to USTR to take certain actions to address three types of foreign government conduct: (1) a violation that denies U.S. rights under a trade agreement, (2) an "unjustifiable" action that "burdens or restricts" U.S. commerce, and (3) an "unreasonable" or "discriminatory" action that "burdens or restricts" U.S. commerce.  19 U.S.C. § 2411(a)(1)(B), (b)(1).  In this case, Section 307 of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from China for reasons untethered to the unfair policies and practices related to technology transfer, intellectual property, and innovation that it originally investigated under Section 301 of the Trade Act.  That authority to impose tariffs resides exclusively with Congress and may only be exercised within the statutory standards set by the Congress.  The delegated authority here does not allow for the free-floating authority to increase or "modify" tariffs untethered to either the original finding or to subsequent developments.  Yet that is exactly what Defendants did here when they chose to

2

issue List 3 and List 4 tariffs in response to China's retaliatory tariffs and other unrelated issues more than 12 months after the initial action, with no rational basis for linking Lists 3 and 4 to statutory standards.  Even if USTR has some limited authority to deem existing tariffs to be "no longer appropriate" and must be modified, it must still do so within the articulated constraints of the statute.

4.     The unlawful modification of the Section 301 tariffs that resulted in the List 3 and List 4 tariff actions violate the Administrative Procedure Act ("APA").  Specifically, USTR (1) failed to comply with the statutory requirements for modifying a Section 301 tariff action in List 3 and List 4A, (2) failed to consider relevant factors when making its decision, and (3) failed to provide any finding or explanation as to why the counter-retaliatory tariffs implemented in List 3 and List 4 were related to or a modification of the "acts, policies, and practices" that were the subject of the Section 301 investigation and findings.  19 U.S.C. §2411(b).

5.     The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any and all tariffs paid by Plaintiff pursuant to List 3 and List 4A.

## JURISDICTION

6.     The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" on the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).

## PARTIES

7.     Illinois Auto Truck is a private, family-owned manufacturing company that

supplies new clutch assemblies and components to the medium and heavy duty truck aftermarket, shipping to over 45 countries worldwide.  Illinois Auto Truck has 85 full-time employees located in the United States located in Illinois and Florida.  It has approximately $28 million in annual revenue.  It imports products subject to the Lists 3 duties and has paid over $1.07 million in Section 301 duties.

8.    Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9.    The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4A.

10.    Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects tariffs on imports.  CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under List 3.

11.    Defendant Troy Miller, Senior Official Performing the Duties of the Commissioner of CBP.  In this capacity, he oversees CBP's collection of tariffs paid by Plaintiff under List 3.

## **STANDING**

12.    Tariffs imposed by Defendants pursuant to List 3 adversely affected and aggrieved Illinois Auto Truck because it was required to pay these unlawful tariffs.  Illinois Auto Truck has standing to sue because it was "adversely affected or aggrieved by agency action within the meaning of" the APA.  5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of

4

which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

## TIMELINESS OF THE ACTION

13.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues."  28 U.S.C. § 2636(i).

14.     The instant action contests action taken by Defendants that resulted in List 3, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018), and List 4, Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation, 84 Fed. Reg. 22,564 (May 17, 2019).

15.     Plaintiff's claims, under List 3, accrued at the earliest on September 24, 2018, when Plaintiff first paid the unlawful tariffs.  The instant action was filed within two years of the date of liquidation of entries on which Plaintiff paid the duties.  Plaintiff has therefore timely filed this action.

16.     The instant action contests action taken by Defendants that resulted in List 4A. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 30 2019).  Plaintiff's claims accrued at the earliest on August 30, 2019, when USTR published notice of List 4A in the Federal Register.  *Id.*  Plaintiff has therefore timely filed this action.

## RELEVANT LAW

17.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's

trade practices.  19 U.S.C. § 2411(b).  If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice.  19 U.S.C. § 2411(b), (c)(1)(B).

18.     Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation.  19 U.S.C. § 2414(a)(1)(B), (2)(B).

19.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."  19 U.S.C. § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.     USTR's Investigation

20.     The current U.S. actions regarding Lists 3 and 4 grew from a specific dispute.  On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).  According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and

innovation." *Id.*

21.    Four days later, on August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under {Section 301(b) of} the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

22.    Seven months later, on March 22, 2018, USTR released a report announcing the results of its investigation.  Office of the United States Trade Representative, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.  USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17.  USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171.  In its official report, USTR failed to quantify the burden or restriction imposed on U.S. commerce by the

investigated practices.

23.    On the same date, USTR separately published a "Fact Sheet" stating that "{a}n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year."  Office of the United States Trade Representative, *Section 301 Fact Sheet* (Mar. 22, 2018), https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/section-301-fact-sheet.  USTR also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies."  *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

## II.    List 1 and List 2

24.    Between April and August 2018 (*i.e.*, within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing tariffs on imports from China covered by the so-called Lists 1 and 2.

25.    On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin."  *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  The products on the proposed list

covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." 83 Fed. Reg. at 14,907. USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation." Office of the United States Trade Representative, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), http://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

26.     On June 20, 2018, USTR published notice of its final list of products subject to an additional tariff of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018). USTR explained that it had "narrow{ed} the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an approximate annual trade value of $34 billion." *Id.* at 28,711.

27.     At the same time that it finalized List 1, USTR announced that it intended to impose a 25% *ad valorem* tariff on a second proposed list of Chinese products in order to "maintain the effectiveness of {the} $50 billion trade action" grounded in its Section 301 investigation. *Id.* at 28,712. USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711–12.

28.     On August 16, 2018, USTR published notice of the final list of products subject to an additional tariff of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion." *Notice of Action Pursuant to*

*Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823–24 (Aug. 16, 2018).

**III.**   <u>**List 3 and List 4**</u>

29.     Tariff actions, taken by Defendants under Section 301—either as an original retaliation against a foreign unfair practice, or as an increase or modification of previously-instituted tariffs due to subsequent events—must comply with the statute.  Only Congress has the "power to lay and collect {t}axes, {d}uties, {i}mposts and {e}xcises" and "to regulate Commerce with foreign nations."  U.S. Const. Art. I § 8, Cls. 1, 3.  In Section 301, Congress delegated authority to USTR to take certain actions to address "unreasonable" or "discriminatory" action by a foreign government that "burdens or restricts" U.S. commerce.  19 U.S.C. § 2411 (b)(1).  However, Defendants did not rely on Section 301(b) as the basis for the increase in tariffs under List 3.  Defendants could not authorize "supplemental" tariff actions in the absence of a new investigation under 19 U.S.C. §2411(b).  Thus, any action that goes beyond the scope of the investigation including supplemental actions are *ultra vires* agency action or otherwise contrary to law.

30.     USTR determined that the value of the burdens or restrictions being imposed by China due to issues regarding technology transfer, intellectual property, and innovation was $50 billion for calendar year 2018.  *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  USTR offset that $50 billion in "burden" by issuing List 1 tariffs on $34 billion in Chinese goods and List 2 tariffs on $34 billion in Chinese goods.  *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action*

*Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 83 Fed. Reg. 28,710, 28,711 (June 20, 2018).  The Government of China then retaliated against the U.S. tariffs by imposing increased tariffs on $50 billion of U.S. goods.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608 (July 17, 2018). In response, USTR counter-retaliated with additional tariffs on goods via List 3, with the value of such goods amounting to $200 billion in trade.  *Id.; Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).  USTR further counter-retaliated with tariffs on an additional $300 billion in goods traded in List 4 which was further modified as List 4A. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821, 45,821 (Aug. 30, 2019).

31.     The United States provided no reasoning as to why the retaliation on imports of Chinese goods amounting to a total value of $500 billion in trade was consistent with the legal requirement that they be predicated on the harm caused by the investigated practices as required by 19 U.S.C. §2411(b)(1).  On its face, the retaliation taken by USTR and the President under Lists 3 and 4A appears to be unrelated to the actions originally investigated by the Defendants that the statute authorizes to remedy.

A.     **List 3**

32.     In its notice for List 3, USTR confirmed that it had relied on China's decision to impose "retaliatory tariffs" as the basis for its proposed action. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018) (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory tariffs imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* ("{Because} China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated, nor did it discuss how the additional U.S. tariffs were commensurate with the new actions by China. *See id.*

33.     USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory tariffs motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "{a}s a result of China's retaliation and failure to change its practice." Office of the United States Trade Representative, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

34.     Leading up to the notice, President Trump suggested that the United States' trade

imbalance with China, rather than the unfair trade actions at issue under Section 301, were the real basis of the decision.  Pres. Donald J. Trump (@realDonaldTrump), Twitter (June 10, 2018, 9:17 PM EDT), https://www.thetrumparchive.com/?dates=%5B%222018-06-10%22%2C%222018-06-11%22%5D&results=1.  Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations.  *See, e.g.*, Pres. Donald J. Trump (@realDonaldTrump), Twitter (July 20, 2018, 8:43AM EDT), https://www.thetrumparchive.com/?dates=%5B%222018-07-19%22%2C%222018-07-21%22%5D&results=1; Pres. Donald J. Trump (@realDonaldTrump), Twitter (July 20, 2018, 8:51 AM  EDT), https://www.thetrumparchive.com/?dates=%5B%222018-07-19%22%2C%222018-07-21%22%5D&results=1; Pres. Donald J. Trump (@realDonaldTrump), Twitter (July 25, 2018, 7:20 AM EDT), https://www.thetrumparchive.com/?dates=%5B%222018-07-24%22%2C%222018-07-26%22%5D&results=1; Pres. Donald J. Trump (@realDonaldTrump), Twitter (July 25, 2018, 7:01 AM  EDT), https://www.thetrumparchive.com/?dates=%5B%222018-07-24%22%2C%222018-07-26%22%5D&results=1.

35.     Within days of these statements, Ambassador Lighthizer announced that, in light of China's retaliatory tariffs, USTR would propose to increase the additional tariff from 10% to 25% *ad valorem*.  Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "{r}egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses."  Office of The United States Trade Representative, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action*

(Aug. 1, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

36.     Shortly thereafter, USTR, at the direction of President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).  USTR also set new dates for a public hearing over six days ending on August 27, 2018.  *See id.*; *see also* Office of The United States Trade Representative, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

37.     At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both *initial and rebuttal* comments from the public and limiting those comments to the discussion of whether specific HTSUS subheadings should be included in the final list.  83 Fed. Reg. at 38,761.  At no point in its request for comments did USTR provide parties the opportunity to comment on the underlying correlation between the overall value of trade affected by List 3 and USTR's findings in its Section 301 report.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018).  Over 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments primarily focusing on whether specific HTSUS subheadings should be included or excluded.  Office of the United States Trade Representative, *Request for Public Comment*

14

*Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, Docket No. USTR-2018-0026, https://beta.regulations.gov/docket/USTR-2018-0026/document.

38.     Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China."  The White House, *Statement from the President* (Sep. 17, 2018), https://trumpwhitehouse.archives.gov/briefings-statements/statement-from-the-president-4/.  Once again, the President made clear that China's response to the $50 billion tariff action (*i.e.*, List 1 and List 2 tariffs) motivated his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

39.     Following the President's announcement, USTR published notice of the final list of products subject to an additional tariff, a list commonly known as "List 3."  83 Fed. Reg. at 47,974.  USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019.  *Id.*  USTR determined that the List 3 tariffs would apply to all listed products that enter the United States from China on or after September 24, 2018.  *Id.*  USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses.  *Id.*

40.     As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.* (brackets omitted).  USTR stated that

the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP policies referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies."  *Id.*  USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China."  83 Fed. Reg. at 47,975.

41.    In the months that followed, China and the United States attempted to resolve their differences through trade negotiations.  Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 tariff rate from 10 to 25%.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

42.    USTR in June 2019 invited the public to seek exclusions from List 3 tariffs on a product-specific basis.  *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).  After receiving 30,283 exclusion requests, USTR granted only 1,498 requests and denied the balance without providing any basis for the divergence from its original Section 301 finding

as to whether the inclusion of specific HTSUS subheadings in List 3 addressed the underlying intellectual property practices of China.  *See* Office of the United States Trade Representative, *Index and Status of Requests for Exclusion from $200 Billion Trade Action (List 3)*, Docket No. USTR-2019-0005, https://comments.ustr.gov/s/docket?docketNumber=USTR-2019-0005; *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 61,674, 61,675 (Nov. 13, 2019). The majority of the List 3 exclusions expired on August 7, 2020.  *See, e.g.*, *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

43.     The tariffs imposed on products covered by List 3 remain in effect as of the date of this Complaint; the limited number of products for which USTR originally granted exclusions from the List 3 tariffs have now expired.  *Notice of Product Exclusion Extension Amendments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 63,332 (Oct. 7, 2020).  As a result, plaintiff has incurred tariffs of almost $1.1 million.

**List 4A**

44.     On May 17, 2019, eight days after it published notice of its decision to increase the tariff rate on imports covered by List 3, USTR announced its intent to proceed with yet another list—List 4—covering even more products which would then be subject to additional tariffs.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019).  Under USTR's modification, List 4 would impose an additional tariff of 25% *ad valorem* on products worth $300 billion.  *Id.*

USTR explained that its decision was motivated by China's "retreat{} from specific commitments made in previous {negotiating} rounds {and} announce{ment of} further retaliatory action against U.S. commerce." *Id.* However, again USTR failed to correlate its action to the Section 301 unfair trade burdens or with any subsequent events.

45.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019, at a rate of 10% *ad valorem*. Pres. Donald J. Trump, (@realDonaldTrump), Twitter (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realdonaldtrump/status/1156979443900067841 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

46.     On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* tariff on goods worth roughly $120 billion, effective September 1, 2019. *Id.* List 4B would impose a 10% *ad valorem* tariff on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. 84 Fed. Reg. at 43,305. Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

47.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the

Trade Act if (1) "{t}he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate."  84 Fed. Reg. at 43,304.  But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency.  *Id.*

48.     Just ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019).  USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods."  84 Fed. Reg. at 45,822.  USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action.  *Id.*

49.     USTR on May 17, 2019 invited the public to seek exclusions from List 4A tariffs on a product-specific basis.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019).  On October 18, 2019, USTR announced that starting October 31, 2019, it would accept tariff exclusion requests under List 4.  Office of the United States Trade Representative, *USTR Statement on Section 301 Tariff Exclusions on Chinese Imports* (Oct. 18, 2019), https://ustr.gov/issue-areas/enforcement/section-301-investigations/section-301-china/china-section-301-tariff.  On

October 24, 2019, USTR published procedures for the exclusion requests. *Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144, 57,144 (Oct. 24, 2019). The window to submit exclusion requests was from October 31, 2019 to January 31, 2020. *Id.* After receiving 8,780 exclusion requests, USTR granted 575 requests and denied the balance without providing any basis for the divergence from the original Section 301 finding. *See* Office of the United States Trade Representative, *Index and Status of Requests for Exclusion from $300 Billion Trade Action (List 4A)*, Docket No. USTR-2019-0017, https://comments.ustr.gov/s/docket?docketNumber=USTR-2019-0017.

50.     The tariffs imposed on products covered by List 4A remain in effect as of the date of this Complaint; the limited 87 exclusion requests for which USTR extended its originally-granted exclusions from List 4 tariffs have now expired. *Notice of Product Exclusion Extension Amendment: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 63,330 (Oct. 7, 2020).

51.     On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional tariffs of 15 percent on products of China covered by" List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019). USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable tariff rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related*

*to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

## STATEMENT OF CLAIMS
### COUNT ONE
### (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

52. Paragraphs 1 through 52 are incorporated by reference.

53. The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

54. The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4A tariffs.

55. Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 on any such determination or finding within the time limits in the statute. Further, the United States provided no finding as to why the retaliation on imports of Chinese goods amounting to a total value of $500 billion in trade was appropriate and tied to the acts, policies or practices found to be unfair, as required by the statute.

56. If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C.§ 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017. USTR's

action for List 4A is even further removed from the initial investigation, based on the May 2019 request for comments.

57.    Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Congress did not authorize USTR to escalate its focused investigatory findings without a subsequent finding.

58.    Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate."  19 U.S.C. § 2417(a)(1)(C).

59.    Plaintiff is therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4A are *ultra vires* and contrary to law.

## COUNT TWO
## (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

60.    Paragraphs 1 through 60 are incorporated by reference.

61.    The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; {or} (E) unsupported by substantial evidence."  5 U.S.C. § 706(2).

62.    Defendants acted arbitrarily and capriciously when they violated the statutory

requirements to modify a Section 301 tariff action, when they failed to meaningfully consider relevant factors when making their decisions, when they failed to adequately explain their rationale, and for the reasons set forth in Count One.

63.     Defendants acted contrary to the Constitution by exceeding the Congressional delegation of authority in Section 301 and for the reasons set forth in Count One.

64.     Defendants exceeded their statutory authority under the Trade Act in modifying the Section 301 tariff actions under List 3 and for the reasons set forth in Count One.

65.     Defendants acted without observance of the procedure required by Section 301, as set forth in Count One.

66.     For List 3, Defendants failed to support their actions with any findings or evidence that its actions in imposing List 3 duties because there was an "increased burden" from China's technology transfer, intellectual property, and innovation policies and practices and was not predicated on the harm caused by the investigated practices.

* * *

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court

(1)     declare that Defendants' actions to modify Section 301 tariffs through List 3 are

unauthorized by, and contrary to, the Trade Act;

(2)     declare that Defendants arbitrarily and unlawfully modified Section 301 tariffs

through List 3 in violation of the APA;

(3)     vacate the tariff actions pursuant to List 3;

(4)     order Defendants to refund, with interest, any tariffs paid by Plaintiff pursuant to

List 3;

(5)     permanently enjoin Defendants from applying List 3 tariffs against Plaintiff and

collecting any tariffs from Plaintiff pursuant to List 3;

(6)     award Plaintiff costs and reasonable attorney fees; and

(7)     grant such other and further relief as may be just and proper.

Respectfully submitted,

_____

Nithya Nagarajan
Jeffrey S. Neeley
Joseph S. Diedrich
Julia B. Banegas

Dated:  September 29, 2022                    HUSCH BLACKWELL LLP
1801 Pennsylvania Ave, NW
Suite 1000
Washington, DC 20006

*Counsel to Illinois Auto Truck*